IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01041-WJM-MEH

GALEN AMERSON, and
FRANCES M. SCOTT,

      Plaintiffs,

v.

CHASE HOME FINANCE LLC,
FANNIE MAE, and
CASTLE MEINHOLD & STAWIARSKI, LLC,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court are two Motions to Dismiss; one filed by Defendants Chase Home Finance LLC and Fannie Mae (self-described "Bank Defendants") [docket #53], and one filed by Defendant Castle Meinhold & Stawiarski, LLC ("Castle Meinhold") [docket #56]. Plaintiffs filed a single response to both motions [*see* dockets ##66, 69], and both sets of Defendants filed replies [dockets ##70, 73]. In addition, following the Tenth Circuit's decision in *In re Miller*, 666 F.3d 1255 (10th Cir. 2012), the Court ordered supplemental briefing regarding the effect of the decision on the pending Motions to Dismiss. (Docket #86.) Each party filed a supplemental brief accordingly. Thus, the matter has been fully briefed, and oral argument would not assist the Court in its adjudication of the motions. For the reasons set forth below based on the entire record herein, the Court RECOMMENDS that the Bank Defendants' Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [filed September 26, 2011; docket #53] be **GRANTED** and that Defendant Castle Meinhold & Stawiarski's Motion to Dismiss Plaintiffs'

Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [filed October 13, 2011;

docket #56] be **GRANTED**.[1]

## BACKGROUND

The facts giving rise to this case date back to October 16, 2009, when Plaintiffs entered into

a loan agreement with American Mortgage Network, Inc. ("AMI"). (Docket #1-2, 2-4.)  Under the

agreement, Plaintiffs borrowed the principal sum of $338,675.00 from AMI, and in exchange,

presented AMI with an executed Note dated October 18, 2006, in the amount of $338,675.00 in

favor of AMI and its successors or assigns. (Docket #1-2, 2-4.)  In addition to the Note, Plaintiffs

also executed a  Deed of Trust securing the loan with property located at 17193 Opal Hill Drive,

Parker, Colorado (the "Property") for the benefit of AMI.  (*Id.* at 5-18.)  The Deed of Trust also

authorized the Public Trustee of Douglas County, Colorado to sell the Property in the event of a

payment default.  (*Id.*)  The Bank Defendants allege that Plaintiffs defaulted on the loan, and as a

result, the Bank Defendants retained Defendant Castle Meinhold to commence a non-judicial

foreclosure of the Property through the Public Trustee.  (Docket #53 at 3.)  In conjunction with the

non-judicial foreclosure, the Public Trustee recorded a Notice of Election and Demand in Douglas

County on March 25, 2010.  That same day, Plaintiffs allegedly received notice from one of the

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

Defendants demanding payment on a debt.[2]  (Docket #42 at 3.)  Plaintiffs assert that the notice sent

by the unidentified Defendant claimed authority to collect on the debt and authority to exercise

rights under a lien document.  (*Id*.)  However, Plaintiffs contend that such a lien does not exist.  (*Id*.)


On September 24, 2010, Defendant Chase Home Finance, LLC ("Chase") commenced a

foreclosure action by filing a Verified Motion for Order Authorizing Sale in Colorado state court

pursuant to Rule 120 of the Colorado Rules of Civil Procedure.  (Docket #53-4.)  Although

Plaintiffs' response to the Rule 120 motion admitted default, Plaintiffs challenged the foreclosure

on other grounds.  (Docket #53-5.)  In particular, Plaintiffs alleged that Defendant Chase had

falsified Plaintiffs' income, which illegally inflated the percentage owed each month.  (*Id*. at 1-2.)

In addition, Plaintiffs "question[ed] who own[ed] the mortgage [and] whether the sale of the

mortgage was properly recorded."  (*Id*. at 2.)

After conducting a hearing on Plaintiffs' objections, the state court entered an order on

December 21, 2010, authorizing the sale of the Property by the Public Trustee.  (Docket #53-6.)

Shortly thereafter, Plaintiffs challenged Defendant Chase's standing to proceed with the foreclosure

by filing an "Affidavit and Combined Motion to Dismiss and Abandon Date of Sale, Due to

Petitioner's Lack of Standing" on January 14, 2011 (the "January Motion to Dismiss").  (Docket

#53-7.)  As the title suggests,  the January Motion to Dismiss argued that because AMI was the

primary owner of the Note,  Chase had no legal claim to the property, and therefore lacked standing

to foreclose.  (*Id*. at 2.)  In support of this contention, Plaintiffs alleged that the Note had not been

---

[2]Plaintiffs' Amended Complaint does not specify which Defendant sent notice of the debt,
nor do Plaintiffs include the letter they received.  The Bank Defendants' motion asserts that Castle
Meinhold initiated the foreclosure action with the notice Plaintiffs describe on March 15, 2010, but
cites only the Amended Complaint in support thereof.  Castle Meinhold does not address the notice
specifically, but incorporates the Bank Defendants' statement of facts into its motion.

properly endorsed and that Chase had not produced the original Note.  (*Id*.)  Plaintiffs raised these same arguments again on February 22, 2011, by filing a "Combined Motion to Dismiss and Abandon Date of Sale, Due to Petitioner's Lack of Standing" (the "February Motion to Dismiss").

On March 9, 2011, the state court issued an order denying Plaintiffs' January Motion to Dismiss.[3]  (Docket #53-9.)  Notably, the state court's order does not address Plaintiffs' standing arguments, but instead relies on Plaintiffs' statements at the December 20, 2011, hearing.  (*Id*.)  In particular, the order cites Plaintiffs' admission of default and Plaintiffs' agreement that the court would issue an order authorizing the sale of the property.  (*Id*.)  The state court concludes by finding that there were "inadequate grounds" to support Plaintiffs' January Motion to Dismiss.  (*Id*. at 2.)

Pursuant to the state court's order, the Public Trustee sold the Property on March 23, 2011, for $367,392.88 to Defendant Chase at a public auction.  (Docket #53-10.)  The Bank Defendants assert that the state court entered an order approving the sale; however, the document the Bank Defendants cite in support of this statement is not signed.  (*See* dockets ##53 at 5, 53-11.)

At some point during the foreclosure proceedings, Plaintiffs filed an appeal with the Colorado Court of Appeals.  (*See* docket #56-1.)  Though the record in this case does not contain the actual appeal, Defendant Castle Meinhold submitted a mandate from the court of appeals with its Motion to Dismiss.  (*See* docket #56-1.)  The mandate was issued by the Clerk of the Court and says nothing regarding the facts of the case nor the arguments presented in Plaintiffs' appeal.  In all of two lines, the mandate simply states that an appeal was presented to the court from Douglas County, and that the court orders the appeal dismissed with prejudice.

Plaintiffs initiated this lawsuit *pro se* on April 20, 2011, shortly after the sale of the Property to Defendant Chase.  (Docket #1.)  Plaintiffs' initial complaint alleged violations of the Truth in

---

[3]It is not clear from the record whether the state court addressed the February Motion to Dismiss.

Lending Act ("TILA") (15 U.S.C. §1601 et seq.) and the Real Estate Settlement and Procedures Act ("RESPA") (12 U.S.C. §2602). (*Id.* at 1.) Rather than filing an answer or other response, the Bank Defendants filed a motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e). (Docket #18.) The Court granted the Bank Defendants' motion and ordered Plaintiffs to file an Amended Complaint on or before August 26, 2011. (Docket #36.) Plaintiffs' Amended Complaint is dated August 26, 2011, and was received by the Court on August 29, 2011. (*See* docket #42.) Consistent with the spirit of Fed. R. Civ. P. 6(d) and in consideration of Plaintiffs' *pro se* status, the Court accepts Plaintiffs' Amended Complaint as timely filed.

Plaintiffs' Amended Complaint alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (the "FDCPA"). (*See* docket #42.) Unlike the initial complaint, Plaintiffs' Amended Complaint is limited to FDCPA claims and mentions neither TILA nor RESPA. (*Id.* at 1.) In addition to Plaintiffs' FDCPA claims, the Amended Complaint also asserts claims for common law fraud and "extreme emotional distress." (*Id.* at 8-9.) Accordingly, jurisdiction is based on 28 U.S.C. §§1331 and 1367. As relief, Plaintiffs request money damages and an order from the Court to quiet title to the property. (*Id.* at 23; docket #42, 9.)

Both the Bank Defendants and Defendant Castle Meinhold responded to the Amended Complaint by filing the present Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (*See* dockets ##53, 56.) In essence, both assert the same five arguments: 1) Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine; 2) the Court should abstain from exercising jurisdiction over Plaintiffs' claims based on *Younger v. Harris*, 401 U.S. 37 (1971); 3) Plaintiffs' FDCPA claims are barred by the statute of limitations; 4) Plaintiffs' claims are not actionable under the FDCPA; and 5) Plaintiffs' fraud and emotional distress claims are misdirected and have not been plead with sufficient particularity. In addition, the Bank Defendants assert that Plaintiffs have failed to allege a single fact regarding Defendant Fannie Mae. The Court will address each argument in

turn.

## LEGAL STANDARDS

### I.     Dismissal of a *Pro Se* Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

### II.    Dismissal Under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are

courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in original).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso*, 495 F.2d at 909. Accordingly, Plaintiffs in this case bear the burden of establishing that this Court has jurisdiction to hear their claims.  Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).  In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Id.*

### III.    Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[4]  The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleads facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129

---

[4]Plaintiffs contend that the pleading requirements of *Iqbal* do not apply to *pro se* litigants. This assertion is incorrect.  *See, e.g. Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010) (applying *Twombly* and *Iqbal* pleading standards to a *pro se* complaint).

S. Ct. at 1949.

The Rule 12(b)(6) evaluation requires two prongs of analysis.  First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id*. at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 1950.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. at 1949.

The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 129 S. Ct. at 1950.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief."  *Id*. (quotation marks and citation omitted).

## IV.    Dismissal pursuant to Fed. R. Civ. P. 8 and 9(b)

The adequacy of most pleadings is governed by Federal Civil Procedure Rule 8(a)(2), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, for certain claims, such as fraud or misrepresentation, a more stringent standard is mandated.  Federal Civil Procedure Rule 9(b) requires that "[f]or any claim alleging fraud, the circumstances constituting fraud or mistake must be stated with particularity." *In re Accelr8 Technology Corp. Securities Litigation,* 147 F. Supp.

2d 1049, 1054 (D. Colo. 2001) (citing Fed. R. Civ. P. 9(b)).  Thus a plaintiff in such a case must

plead "the who, what, when, where, and how of the alleged fraud" or in other words, "the time,

place, and contents of the false representation, the identity of the party making the false statements

and the consequences thereof."  *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of*

*Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006).  In the District of Colorado, this is required regardless

of whether the alleged fraud is an active representation or a passive omission.  *See Tara Woods Ltd.*

*P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1114 (D. Colo. 2010).  The purposes of Rules 8 and

9(b) are "to afford defendant fair notice of plaintiff's claims and the factual ground upon which they

are based."  *United States ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th

Cir. 2010).

## ANALYSIS

Defendants first contend that the Court lacks subject matter jurisdiction over all claims

pursuant to the *Rooker-Feldman* or *Younger* abstention doctrines.  In the alternative, Defendants

argue that Plaintiffs' FDCPA, common law fraud, and emotional distress claims are improperly

asserted and should be dismissed.  The Court will begin by addressing whether there is federal

subject matter jurisdiction over Plaintiffs' claims.  The Court will then proceed to address the

viability of Plaintiffs' FDCPA and state law claims, respectively. Finally, the Court will address the

Bank Defendants' argument that Plaintiffs have failed to assert any claims against Fannie Mae.

## I.     Subject Matter Jurisdiction

Prior to addressing whether the *Rooker-Feldman* or *Younger* abstention doctrines apply, the

Court finds that an understanding of the Colorado real estate foreclosure process is necessary.  *See*

*Plemons v. HSBC Bank USA, N.A.*, No. 11-cv-00038-CMA-BNB, 2011 WL 2976754, at *4 (D.

Colo. June 23, 2011).  The court in *Beeler Props., LLC v. Lowe Enters. Residential Investors, LLC*,

No. 07-cv-00149-MSK, 2007 WL 1346591 (D. Colo. May 7, 2007), set forth a summary of the

process:

In Colorado, consensual liens against real property are created by recordation of a deed of trust granted by the lender to the public trustee of the county where the property is situate. Foreclosure of such liens is a hybrid process governed by statute. The process involves issuance of orders by the state district court authorizing and confirming the sale. C.R.C.P. 120; § 38–38–105, C.R.S. However, the process of conducting the sale and the parties' rights in such process are largely administrative.

Upon default, if the deed of trust so authorizes, the lender or holder of the note may direct the public trustee to sell the property at a foreclosure sale. § 38–38–101(1), C.R.S. The lender must also seek an order from the state district court authorizing the sale under Rule 120. [FN3] Once a sale is authorized, the public trustee advertises and conducts the sale. § 38–38–101(4), C.R.S. The property is sold to the highest bidder who receives a Certificate of Purchase. Often, the purchaser is the holder of the deed of trust who bids all or part of the debt owed by the borrower.

FN3. The Rule 120 procedure requires notice and gives the borrower an opportunity to object to the sale. Under Rule 120(a), the holder of the note files a verified motion in the state court requesting an order authorizing the sale of the property. The clerk of the court then sets a hearing "not less than 20 nor more than 30 days after the filing of the motion[.]" C.R.C.P. 120(a). Interested persons who oppose the motion have an opportunity to respond. C.R.C.P. 120(c). After hearing, the court must "summarily" either grant or deny the motion. C.R.C.P. 120(d). If the court authorizes the foreclosure sale, it also "shall require a return of such sale to be made to the court, and if it appears therefrom that such sale was conducted in conformity with the order authorizing the sale, the court shall thereupon enter an order approving the sale." C.R.C.P. 120(g).

Prior to sale, the borrower may cure the default. After sale, the borrower and any junior lienholders may redeem [FN4] the title to the property by paying, to the holder of the Certificate of Purchase, the sum for which the property was sold with interest from the date of sale, together with any taxes paid or other proper charges. *See* § 38–38–101 to § 38–38–103, C.R.S. Redemption thus annuls the sale. If the redemption period passes, the holder of the Certificate of Purchase may seek an order confirming the sale and obtain a Trustee's Deed.

FN4. The time for redemption depends upon the nature of the property. § 3838302, C.R.S.

Rule 120(d) expressly provides that an order authorizing the sale of property is not "an appealable order or judgment." However, a party may seek injunctive or other relief in any court of competent jurisdiction. *Id.*

*Id.* at *2.  As the *Beeler* court notes, "it is difficult to determine when the rights of the parties are completely determined."  *Id*. at *6.

A.   *Rooker-Feldman* Doctrine

The Bank Defendants and Defendant Castle Meinhold argue that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine.  Plaintiffs counter that, in light of the Tenth Circuit's decision in *Miller*, the *Rooker-Feldman* doctrine does not apply in this case.  The Court takes a middle view, finding that *Rooker-Feldman* bars Plaintiffs' request for injunctive relief, but does not preclude the Court from adjudicating their FDCPA claims for damages.

The *Rooker-Feldman* doctrine is a jurisdictional prohibition that is based on 28 U.S.C. § 1257 which holds that federal review of state court judgments may be obtained only in the United States Supreme Court.  *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994) (holding that the *Rooker-Feldman* doctrine bars "what in substance would be appellate review of the state judgment in a United States district court, based on [a] claim that the state judgment itself violates . . . federal rights").  The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

As the Tenth Circuit acknowledged in *Miller*, cases in this district "have reached differing results concerning whether orders in Rule 120 proceedings have sufficient finality under the *Rooker-Feldman* doctrine to prevent relitigation in subsequent federal proceedings."  *Miller*, 666 F.3d at 1262, n. 5.  Several cases in this District, including some before this Court, have found that *Rooker-Feldman* presents a jurisdictional bar to federal claims arising from foreclosure actions.  *See Virostek v. IndyMac Mortg. Servs.*, No. 11-cv-0030-WYD-MEH, 2011 WL 6937185, at *6 (D. Colo. Sept.

6, 2011) (finding that *Rooker-Feldman* bars federal reconsideration of defendant's conduct in a foreclosure proceeding); *see also Gordon v. Wells Fargo Bank, N.A.*, No. 11-cv-00123-LTB-BNB, 2011 WL 1557866, at *2 (D. Colo. Apr. 25, 2011) (finding plaintiff's request to overturn state court order authorizing sale in foreclosure barred by *Rooker-Feldman*); *Brode v. Chase Home Finance, LLC,* No. 10-cv-00692-WYD-MJW, 2010 WL 2691693, at *6 (D. Colo. July 6, 2010) (claim challenging ruling in state foreclosure proceeding that bank lacked a valid security interest was barred by *Rooker-Feldman* doctrine); *Mayhew v. Cherry Creek Mortg. Co., Inc.,* No. 09-cv-00219-PAB-CBS, 2010 WL 935674, at *16-17 (D. Colo. March 10, 2010) (claim seeking to challenge or reverse completed state foreclosure proceeding was barred by *Rooker-Feldman* doctrine).  However, other cases have found that the *Rooker-Feldman* doctrine does not deprive federal courts of jurisdiction over claims that are related to the state court proceedings but do not challenge the judgment itself.  *See Rousseau v. Bank of New York*, No. 08-cv-00205-PAB-BNB, 2009 WL 3162153, at *4 (D. Colo. Sept. 29, 2009) (finding that plaintiff's FDCPA claims were not barred by *Rooker-Feldman* because the claims were not dependent on the state court's approval of the foreclosure); *see also Kelly v. Wolpoff & Abramson, L.L.P.*, No. 07-cv-00091-EWN-KLM, 2007 WL 2381536, at *4 (D. Colo. Aug. 17, 2007) (finding that federal adjudication of an FDCPA claim did not constitute "appellate-type review" within the meaning of *Rooker-Feldman* where the plaintiff asserted that fraud, not the judgment itself, caused the alleged harm.) A third category of cases decline to take a conclusive position.  *See Goldenhersh v. Aurora Loan Services, LLC*, No. 10-cv-01936-MSK, 2010 WL 3245166 (D. Colo. Aug. 16, 2010) (acknowledging "the absence of clear precedent recognizing the ability of federal courts to revisit (and possibly reverse) state court determinations of whether [a] party seeking foreclosure is indeed the holder of the note..."); *see also Beeler*, 2007 WL 1346591, at *3 (concluding that "either *Rooker-Feldman* or *Younger* is applicable" but declining to rely exclusively on one or the other).

12

The Tenth Circuit's decisions in *Miller* and, most recently, *Dillard v. Bank of New York*, 09-cv-03009-WYD-BNB, 2012 WL 1094833 (10th Cir. 2012), speak to this split of opinions and provide subtle guidance regarding its resolution. The Court in *Miller* found "those cases denying preclusive effect and *Rooker-Feldman* treatment more persuasive than those granting preclusive effect or applying *Rooker-Feldman.*" *Miller*, 666 F.3d at 1261 n.6. However, the Court in *Dillard* made clear that *Rooker-Feldman* treatment is still appropriate in cases where the plaintiff seeks to "completely undo" foreclosure and eviction proceedings that were finalized before the commencement of a federal lawsuit. *Dillard*, 2012 WL 1094833 at *1 n. 3. In short, *Miller* recognizes the "inherently limited scope" of *Rooker-Feldman*, while *Dillard* helps clarify its parameters. *See Miller*, 666 F.3d at 1261 n.6.; *see also Dillard*, 2012 WL 1094833 at *1. Under the Court's reading of *Miller* and *Dillard*, those parameters are defined, in part, by the relief sought.

In determining the scope of *Rooker-Feldman*, the Court begins with cases in this district that have denied *Rooker-Feldman* treatment, namely, *Rousseau* and *Kelly*. Both cases relied heavily on the Tenth Circuit's decision in *Bolden v. City of Topeka*, 441 F.3d 1129 (10th Cir. 2006) in finding that the *Rooker-Feldman* doctrine did not bar plaintiffs from asserting FDCPA claims in federal court even though similar issues could have been raised and adjudicated in state court. Because the core concern of *Rooker-Feldman* involves federal appellate review of state court judgments, the Court in *Bolden* (and subsequently, the courts in *Rousseau* and *Kelly*) found "*Rooker-Feldman* does not bar claims that would be identical even if there had been no state-court judgment; that is, claims that do not rest on any allegation concerning the state court proceedings or judgment." 441 F.3d at 1145.

*Miller* refined *Bolden* insofar as it addressed whether an order in a Rule 120 proceeding could constitute "a judgment" subject to the appellate-type review that *Rooker-Feldman* prohibits. A brief overview of the facts of *Miller* is helpful in determining its scope. *Miller* reached the Tenth

13

Circuit on appeal from the Bankruptcy Appellate Panel ("BAP"). 666 F.3d at 1258. Plaintiffs Mark

and Jamileh Miller filed for bankruptcy and defendant Deutsche Bank filed a motion for relief from

stay. *Id*. Plaintiffs objected, arguing that defendant lacked standing to bring the motion because it

failed to produce the original Note. *Id*. at 1259. Rather than requiring defendant to produce the

original Note, the bankruptcy court relied upon the state court's determination of standing in the

Rule 120 proceeding and granted relief from the stay. *Id*. Plaintiffs appealed to the BAP, which

affirmed the decision below based on the *Rooker-Feldman* doctrine. *Id*. at 1260. In particular, the

BAP concluded that the bankruptcy court properly declined to revisit the Rule 120 order finding that

defendant had standing to proceed with the foreclosure. *Id*.

The Tenth Circuit reversed, concluding that the *Rooker-Feldman* doctrine did not apply for

two reasons. *Id*. at 1261-62. First, the Court noted that the *Rooker-Feldman* doctrine prevents

parties who lose in state court from seeking review of the decision in federal court. *Id*. at 1261.

Although the plaintiffs lost in federal court, it was defendant, the state court winner, who sought

relief in federal court. *Id*. Second, the Court found that plaintiffs' attempt to relitigate an issue

determined in the state case was properly analyzed under issue preclusion and fell outside of the

"inherently limited scope of *Rooker-Feldman*." *Id*. However, even under the more expansive

preclusion doctrine, the Court found that a Rule 120 proceeding did not prevent a federal court from

conducting an independent assessment of defendant's standing to foreclose. *See id*. at 1262. In

support of this conclusion, the Court noted that Rule 120 proceedings are not adversarial, do not

result in a final judgment, and are generally not candidates for appeal. *Id*. Although the Court's

holding was limited to the case before it, footnote six suggests that the Court would apply the same

reasoning to cases outside of the bankruptcy context. *Id*. ("We find those cases [from the District

of Colorado] denying preclusive effect or *Rooker-Feldman* treatment more persuasive than those

granting preclusive effect or denying *Rooker-Feldman* treatment.")

14

Unlike the plaintiffs in *Miller*, who were attempting to stay the foreclosure of their home during bankruptcy proceedings, the plaintiff in *Dillard* sought to "completely undo" the sale of her home by asking the court to quiet title to the property. *Dillard*, 2012 WL 1094833, at *1 n.3. Notably, the plaintiff in *Dillard* also attacked the foreclosure and eviction proceedings themselves, arguing that they did not afford her due process. *Id*. at *1.

Like the plaintiffs in both *Rousseau* and *Miller*, the Plaintiffs in this case challenge Defendants' standing to foreclose. However, like the plaintiff in *Dillard*, Plaintiffs also seek, among other forms of relief, an order quieting title to the property. In light of *Miller*, *Bolden*, and *Dillard*, the Court finds that *Rooker-Feldman* bars Plaintiffs' claim to quiet title, but does not preclude the Court from reviewing their FDCPA and common law claims for money damages.

Defendants attempt to distinguish this case from *Miller* by highlighting the first of the two reasons why the Tenth Circuit rejected *Rooker-Feldman* treatment. With respect to the first reason, Defendants note correctly that the Plaintiffs are both the state court losers and the parties seeking relief in federal court. However, Defendants have not adequately addressed the Tenth Circuit's second reason; namely, that *Rooker-Feldman* is not the same as issue preclusion and is, in fact, much narrower.

Defendants rely heavily on the factual distinctions between this case and *Miller*, emphasizing that this is not a bankruptcy case and no one is seeking relief from a stay. This is true, but it is not determinative. Although Defendants fail to acknowledge the existence or effect of footnote six, the Court reads the statement as an important signal of the Tenth Circuit's proclivity to apply the same reasoning used in *Miller* to cases arising outside of the bankruptcy context.

There is one fact that distinguishes this case from *Miller* and *Rousseau*: Plaintiffs here attempted to appeal the foreclosure to the Colorado Court of Appeals. (Docket #56-1.) As described above, however, none of the parties have produced the actual appeal, and the court of

15

appeals' decision provides no indication of its content or the issues presented therein. (*See id.*)  As the Tenth Circuit noted in *Miller*, the Colorado Court of Appeals has stated "proceedings pursuant to C.R.C.P. 120 are not adversarial in nature, are not final, and generally no appeal may be taken to review the resulting orders." *Miller*, 666 F.3d at 1262.  In light of this statement and the cursory nature of the order entered by the clerk, it is not clear whether the court of appeals conducted any actual review of Plaintiffs' claims.  Thus, the Court is not persuaded that the order issued by the court of appeals constitutes a final decision on the foreclosure proceeding.

Even if the court of appeals' decision is sufficiently final, the Court must still determine whether Plaintiffs' claims in this action challenge the judgment or proceedings themselves, or whether the claims would "be identical even if there had been no state-court judgment." *See Bolden*, 441 F.3d at 1145.  In this case, Plaintiffs' FDCPA, common law fraud, and emotional distress claims are all premised on the manner by which Defendants attempted to foreclose on the property.  Each claim refers specifically to a letter sent to Plaintiffs on March 25, 2010, demanding payment on a debt.  All of the alleged activities from which Plaintiffs' claims arise occurred before the Rule 120 proceeding and certainly before any order was issued from the court of appeals.  To the extent Plaintiffs seek money damages, Plaintiffs' claims are not an attack on the judgment or proceedings, as in *Dillard*, but rather claims that could have been brought regardless of what occurred at the state-court level.  *See Bolden*, 441 F.3d at 1145.

Plaintiffs' request for an order quieting title raises other concerns.  Unlike Plaintiffs' claims for money damages, this form of relief relates directly to the state-court proceedings, as title would not be clouded but for the actions of the state court. As the Tenth Circuit found in *Dillard*, actions that seek to "completely undo" finalized state court eviction proceedings are still within the scope of *Rooker-Feldman*.  Thus, to the extent Plaintiffs seek to quiet title, federal court is not the appropriate forum for such relief.

16

In summary, the Court cannot recommend dismissal of Plaintiffs FDCPA and common law claims for money damages based on the *Rooker-Feldman* doctrine because such claims arose prior to the Rule 120 proceedings and do not require "appellate-type" review of the proceedings themselves or any judgment ultimately entered as a result. However, the Court does recommend dismissal of Plaintiffs' request to quiet title because the claim itself depends on, and in effect attacks, a state court finding below.

    B.    *Younger* Abstention Doctrine

Defendants argue that if *Rooker-Feldman* treatment is not warranted, then Plaintiffs' claims are alternatively and necessarily barred by the *Younger* abstention doctrine. In light of the Tenth Circuit's decision in *Miller*, the Court finds that this binary reading of *Rooker-Feldman* and *Younger* is mistaken.

*Younger* abstention dictates that "federal courts not interfere with state court proceedings by granting equitable relief – such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings – when such relief could adequately be sought before the state court." *Amanatullah v. Colorado Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (quoting *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999)). *Younger* abstention requires that federal courts abstain from exercising jurisdiction when:

> (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings 'involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

*Id.* (quoting *Taylor v. Jaquez*, 126 F.3d 1294, 1297 (10th Cir. 1997)).

Prior to *Miller*, courts in this District applied the *Younger* abstention and *Rooker-Feldman* doctrines alternatively. *See, e.g. Gordon v. Wells Fargo Bank, N.A.*, 11-cv-00123-LTB, 2011 WL 1557866, at *3 (D. Colo. Apr. 25, 2011) (noting that the effect of a Rule 120 proceeding is unclear,

but finding that Plaintiff's FDCPA claims were barred either by *Rooker-Feldman* or *Younger*), *Memphis Street, LLC v. Lowe Enter. Residential Investors*, *LLC*, No. 07-cv-00150-WYD-MJW, 2007 WL 1456067 (D. Colo. May 15, 2007) (finding that either the *Rooker-Feldman* or *Younger* abstention doctrine prohibits a federal court from reviewing a Rule 120 order), *Beeler*, 2007 WL 1346591, at *3 (concluding that "either *Rooker-Feldman* or *Younger* is applicable").

However, *Miller* clarified the "inherently limited scope of *Rooker-Feldman*," and suggested that courts in this District have applied the doctrine too sweepingly. *See Miller*, 666 F.3d at 1261 n.6. As noted above, the *Rooker-Feldman* doctrine is not simply concerned with whether a final judgment is entered, but whether the asserted claims constitute an attack on the judgment itself or on the proceedings through which the judgment was reached. Thus, a court may consistently find that a claim does not implicate *Rooker-Feldman* concerns even where a state court has entered a final judgment in a similar matter. *See Bolden*, 441 F.3d at 1145. Although the finality of proceedings at the state court level does not necessarily mandate *Rooker-Feldman* treatment, it categorically obviates the need for abstention pursuant to *Younger*. *See Bolden*, 441 F.3d at 1145; *see also Amanatullah*, 187 F.3d at 1163.

Defendants' argument in support of *Younger* abstention rests on the apparent assumption that *Rooker-Feldman* and *Younger* are different sides of the same doctrinal coin. This assumption is both incorrect and insufficient to justify abstention in this case. Because Defendants have not identified an "an ongoing state [] proceeding" with respect to the claims asserted in this lawsuit, the Court cannot recommend dismissal of the action based upon the *Younger* abstention doctrine. *See Amanatullah*, 187 F.3d at 1163.

## II.  Plaintiffs' FDCPA Claims

### A.  Statute of Limitations

Defendants argue that Plaintiffs' FDCPA claims are barred by the statute of limitations

because Plaintiffs initiated this action more than a year after the alleged violations.  Plaintiffs argue that the statute of limitations should not bar their TILA or RESPA claims because the fraud alleged was ongoing.  (Docket #66 at 3.)  However, the Court construes Plaintiffs' general argument liberally with regard to their FDCPA claims, as Plaintiffs' Amended Complaint does not assert claims under TILA or RESPA.  After determining the applicable statute of limitations for Plaintiffs' claims, the Court will consider whether tolling is appropriate.

"An action to enforce any liability created by [the FDCPA] may be brought in any appropriate United States district court...within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).  When an FDCPA claim is premised on a false or misleading communication, the claim accrues at the time the communication is made.  *Llewellyn v. Shearson Fin. Network, Inc.*, 622 F. Supp. 2d 1062, 1073-74 (D. Colo. 2009).

In this case, Plaintiffs allege two FDCPA claims.  The first claim asserts that Defendants violated the FDCPA by providing false and misleading information in mailing a demand for payment dated March 25, 2010. (Docket #66 at 6.)  Plaintiffs' second claim alleges overshadowing based on "the document sent to the Plaintiff[s] [which] stated [the] 'balance due' and 'account paid in full['] which overshadows the consumer warning on the document."  Because Plaintiffs fail to identify the offending "Bill," the Court construes the allegation liberally as a reference to the letter dated March 25, 2010.  (*See* docket #1 at 26)  Because both alleged FDCPA violations occurred on March 25, 2010, the standard limitations period expired on March 25, 2011.  *See Llewellyn,* 622 F. Supp. 2d at 1073-74.  However, Plaintiffs did not initiate this action until April 20, 2011, and did not specifically assert the FDCPA claims until August 30, 2011.  Thus, Plaintiffs' FDCPA claims are barred unless the statute of limitations is tolled.  (*See* dockets ##1, 42.)

The Tenth Circuit has not addressed whether the FDCPA permits equitable tolling, and other circuit courts have declined to resolve the question.  *See Ruth v. Unifund CRR Partners*, 604 F.3d

908, 914 (6th Cir. 2010) (recognizing circuit split but reserving judgment on whether the FDCPA permits equitable tolling); *see also Magnum v. Action Collection Service, Inc.*, 575 F.3d 395, 940 (9th Cir. 2009) (observing distinction between the discovery rule and equitable tolling, but finding no need to reach the question of equitable tolling). However, the Tenth Circuit has expressed doubt regarding the applicability of a related doctrine (the federal discovery rule) in the context of the FDCPA. *See Johnson v. Riddle*, 305 F.3d 1107, 1114 n.3 (10th Cir. 2002) ("[T]he continuing scope of the traditional federal discovery rule, at least in the [FDCPA] claim asserted here, has been rendered uncertain by dicta in *TRW Inc. v. Andrews*, 534 U.S.19...(2001)[.]")

Plaintiffs argue that "the time limits for acting on fraud...begin when the Consumer becomes aware of the fraud, not necessarily at the time the initial fraud was committed." (Docket #66 at 3-4.) This argument is akin to the discovery rule, which provides that "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (citations and quotations omitted). In light of the Tenth Circuit's statements in *Riddle*, the Court remains skeptical that the federal discovery rule is applicable in this context. However, it is not necessary to resolve this issue because Plaintiffs discovered the alleged violation on March 25, 2010, when they received the offending letter. Thus, even under the discovery rule, Plaintiffs' FDCPA claims would have expired on March 25, 2011.

Because Plaintiffs provide, and the Court finds, no other legal basis for tolling, the Court concludes that Plaintiffs' FDCPA claims are barred by the statute of limitations. Accordingly, the Court recommends the District Court dismiss Plaintiffs' FDCPA claims on that basis.

B.    Failure to State a Plausible Claim

Mindful the District Court may reach a different conclusion regarding the statute of limitations, the Court will also address whether Plaintiffs' FDCPA claims as stated are plausible.

Defendants argue that the actions they took in furtherance of the non-judicial foreclosure fall outside the scope of the FDCPA.  In support of this contention, they cite *Maynard v. Cannon*, 401 F. App'x 389 (10th Cir. 2010), and several cases from other circuits.

As Judge Krieger observed in *Huckfeldt v. BAC Home Loans Servicing, LP,* 10-cv-01072-MSK-CBS, 2011 WL 4502036, at *5 (D. Colo. Sept. 29, 2011),  *Maynard* highlights but does not resolve the issue of whether a non-judicial foreclosure qualifies as "debt collection" for purposes of the FDCPA.[5]  Judge Krieger reasoned that a non-judicial foreclosure action is a form of debt collection because the portion of the debt that is satisfied by the foreclosure sale is effectively "collected" by the creditor.  *Id*. Ultimately, the Court in *Huckfeldt* found that FDCPA claims were not subject to dismissal simply because they occurred in the context of non-judicial foreclosure.

The Court finds *Huckfeldt* particularly persuasive in light of the following facts.  In this case the letter upon which Plaintiffs' claims are based allegedly demanded a sum of $328,079.62 in order to cure the default. (Docket #8, at 12.)  The letter suggests Defendants' primary interest was in collecting the money they were owed, and that the impending foreclosure was simply a method by which that debt could be paid.  Therefore, the Court is not convinced that Defendants' alleged conduct falls outside the scope of the FDCPA.

In the event the District Court finds that Plaintiffs' FDCPA claims are not barred by the statute of limitations, the Court recommends the District Court also find that Plaintiffs' claims are not subject to dismissal under Rule 12(b)(6) on the grounds asserted by Defendants.

## III.   Plaintiffs' State Law Claims

---

[5]The Court notes that counsel for Castle Meinhold in this case also represented the defendant in *Huckfeldt*.  Judge Krieger issued the Order in *Huckfeldt* on September 29, 2011 and Defendant Castle Meinhold filed its Motion to Dismiss on October 13, 2011.  Curiously, Castle Meinhold's motion makes no mention of *Huckfeldt*, but proffers an argument closely resembling the Court's description of contrary authority.  *Compare Huckfeldt*, 2011 WL 4502036, at *5, n.6, *with* Docket #56 at 10.

In addition to FDCPA claims, Plaintiffs also allege common law fraud and intentional and negligent infliction of extreme emotional distress.   Because Plaintiffs' fraud claim is held to a higher pleading standard than the emotional distress claim, the Court will address the matters in sequence, beginning with the fraud claim.

A.     Fraud Claim

As noted above, Fed. R. Civ. P. 9(b) establishes a heightened standard of pleading for claims of fraud.  Specifically,  a party must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Where fraud is alleged as a result of foreclosure, the Tenth Circuit has required plaintiffs to "set forth the time, place, and contents of the false representation, the identity of the party making the statements and the consequences thereof." *Jensen v. America's Wholesale Lender*, 425 F. App'x 761, 763 (10th Cir. 2011) (citations and quotations omitted).  It is not enough to simply allege that "defendants"made false and misleading statements regarding the status of a  mortgage or the amount owed thereunder. *See id.* at 763-64.

Plaintiffs' fraud claim is premised on the same letter that forms the basis of their FDCPA claims. Plaintiffs contend that "Defendant(s) caused [a  letter] to be sent" demanding payment of $328,079.62 "under the guise of being a debt collector" and that Plaintiffs were mislead into believing that they must forfeit their personal property.[6] (Docket #42 at 8.) Plaintiffs assert that this was a false representation, that Defendants knew they lacked standing or capacity to collect on the supposed debt, that Defendants intended the Plaintiffs accept the representation as true, that Plaintiffs believed Defendants, and that as a result of the aforementioned conduct,  Plaintiffs suffered harm.  (*Id.*)

---

[6]Plaintiffs' fraud claim undermines their FDCPA claims insofar as Plaintiffs suggest that Defendants were not actually debt collectors.  Construing the Amended Complaint liberally, the Court will consider the fraud claim as an alternative argument.

Because allegations of fraud must specifically identify the individual or entity responsible for making the statements, Plaintiffs' generic description of "Defendant(s)" is insufficient. Although Plaintiffs need not rebut Defendants' assertion that they did not mail the letter, Plaintiffs must identify who did. They have not done so. With the exception of describing the content of the letter, Plaintiffs' allegation of fraud is entirely speculative and conclusory. Plaintiffs have certainly not, as the Tenth Circuit requires, stated the "who, what, when, where, and how of the alleged fraud." *See Jensen*, 425 F. App'x at 763. Because Plaintiffs have failed to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b), the Court recommends the District Court dismiss their fraud claim accordingly.

B.   <u>Emotional Distress Claim</u>

Plaintiffs allege that Defendants caused them "extreme" or severe emotional distress by threatening to take their personal property and demanding payment on a debt that it was not entitled to collect. Plaintiffs do not affirmatively assert that Defendants acted with malice or intent, nor do they concede its absence. Instead, Plaintiffs argue that even if Defendants did not act with malice or intent, they are at least liable for "negligent inducement of emotional distress." (Docket #42 at 9.) Construing Plaintiffs' Amended Complaint liberally, the Court will consider both theories of liability.

To state a claim for intentional infliction of emotional distress in Colorado, a plaintiff must show that: "1) the defendant engaged in extreme and outrageous conduct; 2) the defendant engaged in such conduct recklessly or with intent of causing the plaintiff severe emotional distress; and 3) defendant's conduct caused plaintiff to suffer severe emotional distress." *Browning v. American Family Mut. Ins.*, 396 F. App'x 496, 499, n.4 (10th Cir. 2010) (citing *Culpepper v. Pearl St. Bldg. Inc.*, 877 P.2d 877, 882 (Colo. 1994).

In this case, the only "conduct" described is a letter allegedly sent by Defendants. Even

relying on the description provided by Plaintiffs, such conduct does not plausibly rise to the level of "extreme or outrageous" conduct actionable under the tort.  Moreover, Plaintiffs do not assert that Defendants acted either intentionally or recklessly in sending the letter.  Finally, Plaintiffs fail to provide facts showing that any emotional distress they suffered was severe.  Thus, Plaintiffs have failed to plausibly plead a claim for intentional infliction of emotional distress.

Plaintiffs argue in the alternative that Defendants negligently caused their emotional distress. "Under Colorado law, a negligent infliction of emotional distress claim requires proof that the plaintiff sustained physical injury or was in the 'zone of danger.'" *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1211 (10th Cir. 2001) (citing *Culpepper*, *supra*.)  In this case, Plaintiffs do not allege physical danger or proximity to danger.  Thus, they cannot support a plausible claim for negligent infliction of emotional distress.

Because Plaintiffs fail to plausibly plead claims for either intentional or negligent infliction of emotional distress, the Court recommends dismissal of Plaintiffs' "extreme emotional distress" claim.

## IV.    Plaintiffs' Claims against Defendant Fannie Mae

In addition to the arguments advanced by all Defendants, the Bank Defendants contend that Plaintiffs have failed to allege a single fact against Fannie Mae because Fannie Mae is only referred to in the caption and second paragraph of the Amended Complaint.  (Docket #53 at 12.)  Although Plaintiffs do not address this argument in their response, the Court is not persuaded that Plaintiffs' failure to specifically refer to Fannie Mae by name precludes liability *per se*.  As the Bank Defendants note, Plaintiffs identify Fannie Mae in paragraph 2 of the Amended Complaint along with all of the other defendants listed in the caption.  (Docket #42 at 1.)  A liberal construction of paragraph 2 suggests that Plaintiffs' use of the term "Defendant(s)" is intended to encompass all defendants named in the Amended Complaint.  Though Plaintiffs' choice is admittedly imprecise,

the Bank Defendants have not demonstrated that Plaintiffs' claims against Fannie Mae should be excluded on that basis.

**V.    Leave to Amend**

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989). As such, in this jurisdiction, the Court typically does not dismiss a claim under Rule 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon*, 935 F.2d at 1109-10.

At the outset, the Court notes that Plaintiffs' pleadings have already been amended. Upon motion of Defendants and by order of this Court, Plaintiffs were instructed to file an amended complaint providing a more definitive statement of their claims. (*See* docket #36.) In particular, the Court advised Plaintiffs to "1) explain what each defendant did to [them]; 2) identify when each defendant's conduct took place; 3) explain how each defendant's conduct harmed [them]; and 4) state plainly what specific legal right each defendant violated." (*Id*. at 4.) In this way, Plaintiffs have once been provided with "notice and opportunity to amend." *See Bellmon*, 935 F.2d at 1109-10.

In determining whether additional leave to amend would cure the deficiencies of Plaintiffs' claims, the Court looks at each category of claims in turn. Beginning with Plaintiffs' FDCPA claims, because the basis for the Court's recommendation of dismissal is related to the timing of the claims rather than the quality of Plaintiffs' pleading, the Court finds that leave to amend would be futile. With respect to Plaintiffs' common law claims, the Court reaches the same conclusion but for different reasons. The Court recommends dismissal of Plaintiffs' fraud claim because Plaintiffs provide almost no factual support for their allegations. Indeed, Plaintiffs' Amended Complaint

suggests that Plaintiffs are not even sure whether one, two, or all of the Defendants named in this action are responsible for alleged fraud.  In addition, Plaintiffs describe no circumstances in their Amended Complaint that would lead this Court to plausibly find that fraud had been committed by Defendants in this case.  Plaintiffs' emotional distress claim is similarly deficient.  The Court considered both intentional and negligent infliction of emotional distress, and found that Plaintiffs failed to describe any circumstances that were plausibly "extreme or outrageous" or any threat of physical danger.  Although it is always theoretically possible that more information could be found in the course of discovery, the applicable pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *See Jensen*, 425 F. App'x at 764 (quoting *Iqbal*, 129 S. Ct. at 1949).  The absence of information in Plaintiffs' Amended Complaint  leads the Court to find that amendment would not be curative, as Plaintiffs were on notice that greater particularity was necessary but, nevertheless, failed to provide it.  (*See* docket #36 at 4.)

Consequently, because it is unlikely that an additional opportunity to amend may cure the current defects in the Plaintiffs' Amended Complaint, the Court recommends that the Plaintiffs be denied another opportunity to amend their pleading in this matter.

## CONCLUSION

As described above, the Court finds that Plaintiffs' claim to quite title is barred by the *Rooker-Feldman* doctrine, but that Plaintiffs' claims for damages are not.  Likewise, this Court finds that it is not barred from hearing this action pursuant to the *Younger* abstention doctrine.  With the exception of Plaintiffs' claim to quiet title,  the Court does not find that dismissal is warranted on jurisdictional grounds.  However, the Court does find that Plaintiffs' claims should be dismissed under Rule 12(b)(6).  Specifically, the Court finds that Plaintiffs' FDCPA claims are barred by the statute of limitations, but that Defendants have not shown that they are otherwise invalid.  Additionally,  Plaintiffs' fraud and emotional distress claims are not pled with sufficient particularity

under Rules 9 and 8, respectively.  In light of the above findings, the Court **RECOMMENDS** the Bank Defendants' Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [filed September 26, 2011; docket #53] be **GRANTED** and that Defendant Castle Meinhold & Stawiarski's Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [filed October 13, 2011; docket #56] be **GRANTED**.  In addition, because the Court finds that further opportunities to amend are not likely to cure the deficiencies described herein, the Court **RECOMMENDS** dismissal of the action with prejudice.

Dated and entered at Denver, Colorado, this 7th day of May, 2012.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge